**FILED**

DISTRICT COURT OF GUAM

SEP 28 2005

MARY L.M. MORAN
CLERK OF COURT

## DISTRICT COURT OF GUAM

### TERRITORY OF GUAM

| | |
|---|---|
| HWANG JIN YEONG,<br>aka Jin Yeong Hwang , | Criminal Case No. 00-00150 |
| Petitioner, | Civil Case No. 04-00039 |
| vs. | |
| UNITED STATES OF AMERICA, | **ORDER** |
| Respondent. | |

Petitioner Jin Yeong Hwang ("Hwang") filed a Motion to Vacate, Set Aside or Correct Sentence by a Person in Federal Custody pursuant to 28 U.S.C. § 2255 ("Motion").[1] The Court deems the matter appropriate for decision without oral argument. FED.R. CIV. P. 78. After considering all the submissions, the Court DENIES Hwang's motion in its entirety.

### BACKGROUND

On February 5, 2001, Hwang pled guilty to one count of Conspiracy to Import over 50 grams of Methamphetamine, in violation of 21 U.S.C. § § 952(a), 960 and 963. At the time of his plea, Hwang stipulated to facts contained in his plea agreement that he participated in a conspiracy with others to import 9,000 - 10,000 grams of crystal methamphetamine a/k/a 'ice' from the Philippines into Guam for purposes of distribution and profit.[2] On November 13, 2002, the Court sentenced Hwang to one hundred sixty-eight (168) months imprisonment. The judgment of conviction was entered on the docket on November 19, 2002. In November 2002, the petitioner filed an appeal with the Ninth Circuit. On June 20, 2003, the appellate court

---

[1] Hwang filed his initial Motion and brief in support of his motion on August 27, 2004. *See,* Docket No. 82 and 83, respectively. On April 27, 2005, Hwang filed a letter to include additional grounds in light of the newly decided case, *United States v. Booker,* 125 S.Ct. 738 (2005). *See,* Docket No. 94A. The Court will construe Hwang's letter as an addendum to his original motion. Both filings will be referred to collectively as the "motion."

[2] *See,* Plea Agreement at ¶ 8, Docket No. 11.

1   affirmed Hwang's conviction. *United States v. Hwang Jin Yeong*, No. 02-10617 (9th Cir. June

2   20, 2003). Hwang *pro se* and incarcerated, brought this motion pursuant to 28 U.S.C. § 2255,

3   requesting the Court to vacate his sentence. *See,* Docket Nos. 82 and 94A.

## ANALYSIS

5         28 U.S.C. § 2255 allows persons in federal custody to collaterally challenge the

6   constitutionality, legality or jurisdictional basis of the sentence imposed by a court.[3] *See, United*

7   *States v. Addonizio*, 442 U.S. 178, 185, 99 S.Ct. 2235, 2240 (1979). Since such a challenge calls

8   into question a conviction's finality, collateral relief is an extraordinary remedy that should only

9   be granted when a fundamental defect could have resulted in a complete miscarriage of justice,

10   or the rudimentary rules of fair procedure were not followed. *United States v. Timmreck*, 441

11   U.S. 780, 783, 99 S. Ct. 2085, 2087 (1979).

12         *Hwang* claims that he is entitled to relief for the following reasons: 1) his sentence was

13   improperly enhanced in light of *United States v. Booker*, 125 S.Ct. 738 (2005); 2) the

14   government breached the plea agreement at sentencing, by failing to move for a reduction for

15   "substantial assistance" pursuant to U.S.S.G. § 5K1.1;[4] 3) his sentence was imposed in violation

16   of the law, specifically by the Court's consideration of dismissed counts II and III in determining

17   his sentence; 4) the Court erred in failing to award him a downward departure for "cultural

18   assimilation;"5) his plea was involuntary because he is actually innocent; 6) counsel was

19   ineffective for failing to investigate his case properly or to inform the Court at the time of the

20   plea that Hwang was innocent; and 7) counsel at sentencing and on appeal was ineffective

21   because he failed to address the issues raised in two through six above.

22   **Applicability of *Booker***

23         Hwang claims that his sentence was unconstitutionally enhanced in light of the recent

24   Supreme Court decision *Blakely v. Washington*, 124 S. Ct. 2531 (2004) and *United States v.*

---

26   [3] The statute states, in pertinent part:

27       A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255.

[4] Hwang was sentenced under the 2001 edition of the *United States Sentencing Commission Guidelines Manual.* ("U.S.S.G.") Accordingly, any mention of the U.S.S.G. herein shall refer to that edition.

1  *Booker*, 125 S.Ct. 738 (2005). Because Hwang's claim was final when *Blakely* was decided,
2  *Blakely* and by extension *Booker*, are applicable only if they apply retroactively to cases on
3  collateral review.

4        Justice Breyer expressly stated that *Booker* applied only "to all cases on direct review."
5  125 S. Ct. at 769. Further, all federal courts addressing this same issue of retroactive application
6  have held *Blakely* and *Booker* do not apply retroactively to cases on collateral review. *See,*
7  *Green v. United States*, 397 F.3d 101 (2nd Cir. 2005); *Guzman v. United States,* 404 F. 3d 139
8  (2nd Cir. 2005); *Humphress v. United States*, 398 F.3d 855 (6th Cir. 2005); *McReynolds v. United*
9  *States,* 397 F. 3d 479 (7th Cir. 2005); *In re Anderson,* 396 F. 3d 1336 (11th Cir. 2005); *Varela v.*
10 *United States,* 400 F. 3d 864 (11th Cir. 2005); *Tuttamore v. United States*, 2005 WL 234368
11 (N.D. Ohio, 2005). Accordingly, Hwang's claims that *Booker* applies to his sentence and his
12 counsel was ineffective in this regard are equally without merit.[5] Hwang's requests with respect
13 to these claims are denied.

14 **Procedural Bar**

15       Hwang did not raise the remaining claims in the District Court prior to judgment in the
16 criminal case and on direct appeal. Claims not asserted previously, although available, are
17 procedurally barred absent a showing of cause and actual prejudice. *United States v. Frady,* 456
18 U.S. 152, 166 (1982). "Where a defendant has procedurally defaulted a claim by failing to raise
19 it on direct review, the claim may be raised in habeas only if the defendant can first demonstrate
20 either 'cause' and actual 'prejudice,' or that he is 'actually innocent.'" *Bousley v. United States*,
21 523 U.S. 614, 622 (1998).

22       As noted, Hwang did not raise/object to the issues he asserts in the instant petition before
23 either the trial/sentencing court or appellate court. However, Hwang states that he did not
24 address them previously because of ineffective counsel. *See, Murray v. Carrier,* 477 U.S. 478,
25 488 (1986) ("[i]neffective assistance . . . is cause for a procedural default"). Accordingly the
26 Court will consider Hwang's claims in that context.

27

28     [5] Even if *Booker* could be applied retroactively, the Court notes that the defendant has failed to provide any evidence that his sentence would have been different had the sentencing judge known that the guidelines were merely advisory.

1 | **Ineffective Assistance of Counsel Claims**.

2 To demonstrate ineffective assistance of counsel, the petitioner must show both that his

3 counsel's performance was deficient and that the deficient performance prejudiced his defense.

4 *Strickland v. Washington*, 466 U.S. 668, 687 (1984). A petitioner fulfills the first prong of the

5 *Strickland* test by showing that "the behavior complained of falls below prevailing professional

6 norms." *United States v. McMullen*, 98 F.3d 1155, 1158 (9th Cir. 1996). An inquiry into

7 counsel's conduct probes "whether counsel's assistance was reasonable considering all the

8 circumstances." *Strickland*, 466 U.S. at 688. In engaging in such an inquiry, the Court "must

9 indulge a strong presumption that counsel's conduct falls within the wide range of reasonable

10 professional assistance" especially where counsel's acts may be considered "'sound trial

11 strategy.'" *Id.* at 689. Counsel is not required to pursue all non-frivolous claims. As a matter

12 of professional judgment, competent counsel may recognize an advantage in focusing on central

13 issues rather than pursuing numerous weak ones. *Jones v. Barnes*, 463 U.S. 745 (1983).

14 *Application of U.S.S.G. § 5K1.1.* Hwang contends that his sentencing/appellate counsel

15 was ineffective because he neither objected to nor raised the issue regarding the government's

16 failure to move for reduction of the offense level based on "substantial assistance" provided by

17 Hwang.

18 Hwang's argument is without merit. Only the government can move for a downward

19 departure below the guideline range for "substantial assistance" under § 5K1.1.[6] In this instance

20 the government chose not to take such action. The plea agreement states that "[i]f the United

21 States believes the defendant has provided 'substantial assistance' pursuant to [18 USC §

22 3553(e)], the United States may **in its discretion** request the Court to depart below the guideline

23 range when fixing a sentence for this defendant . . . " (emphasis added) *See,* Plea Agreement at

24 ¶ 5, Docket No. 11. Further, it provides the following criteria under which the government

25 would determine if a 5K1.1 motion was warranted:

26    1)      the United States' evaluation of the significance and usefulness of any assistance rendered by defendant;

27

28    2)      the truthfulness, completeness, and reliability of any information or testimony provided by defendant;

---

[6] U.S.S.G. § 5K1.1 provides in pertinent part, "[u]pon motion of the government stating that the defendant has provided substantial assistance in the investigation or the prosecution of another person who has committed an offense, the court may depart from the guidelines."

1          3)      the nature and extent of defendant's assistance;

2          4)      any injuries suffered or any danger or risk of injury to
                   defendant or defendant's family resulting from any
3                  assistance provided by defendant, and;

4          5)      the timeliness of any assistance provided by defendant.

5    *Id.*

6          Here, the "information" provided by Hwang was limited to providing four names. Two

7    of the four individuals named were directly involved with the drugs in the instant case. The

8    remaining two persons were those Hwang merely knew of or whose names he had heard

9    mentioned in connection with drugs in general. This information was provided at a single

10   debriefing the day after Hwang entered his plea.[7] Hwang argues that because he gave all the

11   information that he had he should be entitled to a substantial assistance departure pursuant to the

12   terms of the plea agreement. He is mistaken. The plea agreement is quite clear that the

13   government retains the discretion to determine whether or not Hwang has provided substantial

14   assistance. The government maintains that the information provided was simply not enough, and

15   that it did not yield any actual results (it did not further any investigation, or lead to other arrests

16   or convictions).

17         Hwang has not demonstrated that the government acted in bad faith, nor has he shown

18   that his information was actually used. Nothing remotely "substantial" came from the

19   information Hwang provided. Further, Hwang has not produced any evidence of an

20   "unconstitutional motivation" on the part of the government in failing to make such a motion.

21   *See Wade v. United States*, 504 U.S. 181, 185-186 (1992) ("[F]ederal courts have authority to

22   review a prosecutor's refusal to file a substantial-assistance motion and to grant a remedy if they

23   find that the refusal was based on an unconstitutional motive. For example, a defendant would

24   be entitled to relief if a prosecutor refused to file a substantial-assistance motion because of the

25   defendant's race or religion").

26         In sum, Hwang has failed to show that the government acted in "bad faith" or had any

27   improper motivation whatsoever. Likewise, Hwang's contention that the government breached

28

---

[7] The Court notes that over one and one-half years expired between the time Hwang entered his plea and the time he was sentenced. He had more than ample time to provide information that could have resulted in a reduction under 5K1.1. In fact, on one occasion, the government agreed to delay Hwang's sentencing for an additional six months in order to facilitate Hwang's cooperation. No new usable information materialized. *See*, Docket No. 15.

1  the plea agreement for refusing to move for a "substantial assistance" departure, fails.
2  Accordingly, the Court finds that a departure pursuant to § 5K1.1 was not warranted. And, his
3  claims of ineffective assistance of counsel in this regard are without basis.

4      *Application of U.S.S.G. § 2D1.1(b)(4)(A) and (B).* Hwang contends that his sentencing/
5  appellate counsel was ineffective because he failed to object to or raise the issue regarding the
6  Court's application of § 2D1.1(b)(4)(A) and (B)[8] in determining the appropriate offense level.
7  Moreover, Hwang maintains that the Court's application of § 2D1.1(b)(4)(A) and (B), imposing
8  a two level enhancement, was contrary to law since the Court considered the counts that were
9  dismissed in imposing a two level upward departure.[9]

10      Hwang's argument is without merit. The record is devoid of any evidence that the Court
11  considered the dismissed counts in its application of § 2D1.1(b)(4)(A) and (B). The count to
12  which Hwang pled involved a conspiracy to import methamphetamine. The nature of this charge
13  alone is sufficient to invoke the application of § 2D1.1(b)(4)(A) and (B).

14      Assuming *arguendo* that the Court considered the dismissed counts, the stipulated facts
15  entered into between the government and Hwang at the time of his plea and subsequently
16  affirmed under oath in the plea colloquy[10] contradict Hwang's contentions. Hwang admitted in

---

18      [8] U.S.S.G. § 2D1.1(b)(4)(A) and (B) provide in pertinent part, "[i]f (A) the offense involved the importation of . . .
19  methamphetamine . . . and (B) the defendant is not subject to an adjustment under § 3B1.2 (Mitigating Role), increase by 2 levels."

20      [9] Count II, Importation of Methamphetamine and Count III, Attempt to Possess Methamphetamine with Intent to Distribute were to be dismissed pursuant to the plea agreement after the defendant was sentenced.

21      [10] The relevant portion of the audio from the change of plea hearing on February 5, 2001 is as follows:

| | |
|---|---|
| Court: | Now, Mr. Yeong, the facts stated in paragraph eight as to what happened here that's in your plea agreement there - |
| Hwang: | Yes. |
| Court: | - that's what happened in this case? |
| Hwang: | Yes. |
| Court: | Now, did you agree with somebody that methamphetamine was to be brought in from the Philippines? |
| (Translation/ response not audible) | |
| Court: | Let me give you a suggestion. Why don't you translate the facts to him just so that everything is clear in his mind. |
| Bischoff: | What's that suggestion your Honor? |
| Court: | I'd suggest the translator just translate the facts in the plea agreement to him to refresh everything just in case he might be a little - he might have forgotten part of it. If you'll look at paragraph eight and just translate that to him. |
| (Translation) | |
| Hwang: | That's correct. |
| Court: | Okay. That's what happened in this case, the facts in that plea agreement? |
| Hwang: | Yes. |
| Court: | Do you wish to add anything to it? |
| Hwang: | No. |

1   the stipulated facts to being involved in and aiding and abetting co-defendant Jae June Pak

2   ("Pak") in the actual importation of methamphetamine from the Philippines into Guam. *See*

3   Plea Agreement at ¶ 8, Docket No. 11.

4          Hwang was also informed of and agreed that U.S.S.G. § 1B1.2 applied in his case.[11]

5   Hwang further agreed in his plea agreement, that he "understands that the facts he stipulates to

6   herein will be used, pursuant to [U.S.S.G. §] 1B1.2, in calculating the applicable guidelines

7   level."[12]  *Id* at ¶ 7.  A sentencing judge must consider only conduct included in the plea

8   agreement when selecting a guideline under § 1B1.2. *United States v. Crawford,* 185 F.3d 1024

9   (9th Cir.1999). The Court was required to use the importation guideline due to the stipulations

10  in the plea agreement. If more serious conduct is "specifically established" by stipulations in a

11  plea, then § 1B1.2(a) requires the district court to consider that conduct in selecting a guideline

12  range. *See, United States v. Saldana,* 12 F.3d 160 (9th Cir.1993) (requiring district court to

13  consider under § 1B1.2(a) more serious conduct specifically established by plea agreement).

14  Accordingly, Hwang's contention that the guideline considering the importation was improperly

15  applied, fails. And, his claim of ineffective assistance of counsel in this regard is without basis.

16         *Application of U.S.S.G. § 5H1.6 and 5K2.0.* Hwang claims that his counsel was

17  ineffective at sentencing because he did not request an application of guideline sections 5H1.6

18

---

19  | Court: | Government, would you be prepared to prove those facts if this were to have gone to trial? |

20  | Gov: | Yes, your Honor. |
    | Court: | How do you now plead to the charge Mr. Yeong, guilty or not guilty? |

21  | Hwang: | Guilty. |

22  [11] U.S.S.G. § 1B1.2 provides in pertinent part:

23  (a)   Determine the offense guideline section in Chapter Two (Offense Conduct) applicable
         to the offense of conviction . . . However, in the case of a plea agreement . . . containing

24       a stipulation that specifically establishes a more serious offense than the offense of
         conviction, determine the offense guideline section in Chapter Two applicable to the
         stipulated offense.

25

26  (b)   After determining the appropriate offense guideline section pursuant to subsection (a)
         of this section, determine the applicable guideline range in accordance with § 1B1.3
         (Relevant Conduct).

27

28  (c)   A plea agreement . . . containing a stipulation that specifically establishes the
         commission of additional offense(s) **shall** be treated as if the defendant had been
         convicted of additional count(s) charging those offense(s). (emphasis added).

[12]  The application notes for this subsection of the guidelines explains this further, indicating "a factual statement or a stipulation contained in a plea agreement . . . is a stipulation for purposes of subsection (a) only if both the defendant and the government explicitly agree that the factual statement or stipulation is a stipulation for such purposes."

1   and 5K2.0.[13] Moreover, Hwang maintains that he was entitled to said downward adjustment for

2   cultural assimilation pursuant to *United States v. Lipman*, 133 F.3d 726 (9th Cir. 1997).

3       Hwang misunderstands the application of cultural assimilation. *Lipman* recognized

4   cultural assimilation as a proper basis for downward departure for defendant's charged under 8

5   U.S.C. § 1326,[14] who have adapted to American culture and who after deportation have returned

6   to the United states for cultural rather than economic reasons. Hwang has admitted that prior to

7   his coming to Guam on this single occasion, he had absolutely no ties to the United States nor

8   has he adopted any significant part of what can be considered American culture or "way of life."

9   Accordingly, a downward departure for cultural assimilation is inappropriate. Since no error

10  occurred, Hwang's claim of ineffective assistance of counsel in this regard is also without merit.

11      *Failure to file Writ of Certiorari.* Hwang contends that appellate counsel was ineffective

12  for failing to file a writ of certiorari in the Supreme Court upon his explicit request. The facts

13  with respect to Hwang's assertion are not disputed. However, the record is clear by virtue of the

14  Affidavit of Counsel filed with the Ninth Circuit, that counsel believed any appeal of the

15  decision of the Ninth Circuit to the Supreme Court would be frivolous.[15] FED. R. APP. P. 4.1(e)

16  provides, "[i]f requested to do so by the client . . . . counsel shall petition the Supreme Court for

17

18  [13] U.S.S.G. § 5K2.0 provides a departure is appropriate when "there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines."

19  [14] 8 U.S.C. § 1326 (a) governs the reentry of removed aliens and states:

20  Subject to subsection (b) of this section, any alien who:

21  (1) has been denied admission, excluded, deported, or removed or has departed the United States while an order of exclusion, deportation, or removal is outstanding, and thereafter

22  (2) enters, attempts to enter, or is at any time found in, the United States, unless

23  (A) prior to his reembarkation at a place outside the United States or his application for admission from foreign contiguous territory, the Attorney General has expressly consented to such aliens reapplying for admission; or

24  

25  (B) with respect to an alien previously denied admission and removed, unless such alien shall establish that he was not required to obtain such advance consent under this chapter or any prior Act,

26  

27  shall be fined under title 18, or imprisoned not more than 2 years, or both.

28  [15] See, Motion to Withdraw as Counsel of Record, ¶ 10 which indicates in part, "[i]n my considered judgment it could not be clearer that there are no grounds for seeking Supreme Court review that are nonfrivolous."

1 certiorari only if in counsel's considered judgment sufficient grounds exist for seeking Supreme
2 Court review. See SUP. CT. R. 10."[16]

3      Counsel in this regard had an affirmative duty not to file for certiorari if he believed the
4 basis for the appeal was frivolous. Hwang fails to assert any basis to support the viability of a
5 request for certiorari.[17] Likewise, having made an independent review of the record in this matter
6 the Court finds that there are insufficient grounds to support a request for review by the Supreme
7 Court. Accordingly, Hwang's claim of ineffective assistance of counsel in this regard is without
8 merit.

9      *Voluntariness of Guilty Plea.* Hwang claims that his plea was involuntary because he
10 was actually innocent and had so informed his counsel. Hwang contends that after he spoke to
11 counsel about his innocence, counsel responded by informing him that "he could never win; that
12 if he [Hwang] did not plead guilty he would receive 25-30 years in prison but if he pled only 2-3
13 years."[18] Hwang asserts that the "threat" of 25-30 years in prison coerced him to enter a guilty
14 plea. Hwang maintains counsel was ineffective in this regard. Further Hwang alleges he pled
15 guilty because the trial lawyer told him ". . . . if [he] changed his mind the judge would not like
16 it and it would have a negative impact on [him]. . . ." *Id.* at 10. In response to Hwang's
17 allegations, the government proffers an affidavit of trial counsel in addition to providing the
18 reports of Agent Kim regarding the defendant's briefing conducted on February 6, 2001 as proof
19 of Hwang's guilt.

20
21   [16] Supreme Court Rule 10 provides in pertinent part:

22     . . . . A petition for writ of certiorari will be granted only for compelling reasons. The
following, although neither controlling nor fully measuring the Court's discretion
23 indicate the character of the reasons the Court considers:

24     (a) a United States court of appeals has entered a decision in conflict with the
decision of another United States court of appeals on the same important
matter; has decided an important federal question in a way that conflicts with
25 a decision by a state court of last resort; or has so far departed from the
accepted and usual course of judicial proceedings or sanctioned such a
26 departure by a lower court, as to call for an exercise of this Court's
supervisory power.
27
    (c) . . . . a United States court of appeals has decided an important question
28 of federal law that has not been, but should be, settled by this Court, or has
decided an important federal question in a way that conflicts with relevant
decisions of this Court.

  [17] Supreme Court Rule 10 further states, "[a] petition for a writ of certiorari is **rarely granted** when the asserted error
consists of erroneous factual findings or the misapplication of a properly stated rule of law." (Emphasis added).

  [18] *See,* Defendant's Brief at Exhibit B, p. 9, Docket No. 83.

1         Upon consideration of the totality of the circumstances, a guilty plea is considered valid

2    only if the defendant intelligently and voluntarily pleads guilty under the totality of the

3    circumstances. *See, Brady v. United States,* 397 U.S. 742, 749, 90 S.Ct. 1463, 1469 (1970);

4    *Boykin v. Alabama,* 395 U.S. 238, 242-43, 89 S.Ct. 1709, 1711-12 (1969). A plea may be

5    involuntary if the defendant does not understand the nature of the constitutional rights he is

6    waiving or understand what he is giving up and receiving in entering a guilty plea. *See,*

7    *Henderson v. Morgan,* 426 U.S. 637, 645 n. 13, 96 S.Ct. 2253, 2257 (1976). Additionally, a

8    guilty plea may be involuntary where induced by threats, misrepresentation, or promises "that

9    are by their nature improper." *Mabry v. Johnson,* 467 U.S. 504, 509, 104 S.Ct. 2543, 2548

10    (1984).

11         Rule 11 imposes a series of requirements on district courts before they may accept a

12    guilty plea. *See,* FED.R.CRIM.P. 11. These procedures are designed to ensure a defendant

13    pleading guilty understands his constitutional rights, the plea is being entered voluntarily with

14    a full understanding of the nature of the crime charged and the consequences of the guilty plea,

15    and a factual basis exists for the crime to which the plea is being offered.

16         In accordance with Rule 11(b)(2),[19] the Court inquired as to the voluntariness of

17    Petitioner's guilty plea at his change of plea hearing on February 5, 2001:[20]

18             Court:        Are you fully satisfied with the advice and

19                              representation given to you in this case by your
                                        lawyer, Mr. Bischoff?
             Hwang:    Yes.

20             Court:        Is your willingness to plead guilty the result of
                              discussions that you or your lawyer had, or you

21                              and your lawyer have had with the lawyer for the
                              government?

22             Hwang:    Yes.
             Court:        Now, there should be a copy of the plea agreement

23                              in front of you there.
             Hwang:    Yes.

24             Court:        Okay, was this document translated to you into
                              your native language before you signed it?

25             Hwang:    Yes.

26

27        [19] FED. R. CRIM. P. 11(b)(2) provides:

28             Before accepting a plea of guilty or nolo contendere, the court must address the
             defendant personally in open court and determine that the plea is voluntary and did not
             result from force, threats, or promises (other than promises in the plea agreement).

        [20] Hwang also filed a request for an evidentiary hearing based on discrepancies in the official transcript of the change of plea hearing. *See* Docket No. 95. The Court has carefully listened to the audio tape of the proceedings concerning the change of plea in its entirety and relies on the audio tape as cited herein in fashioning its decision. Accordingly, Hwang's request for a hearing in this regard is moot and will not be further considered.

| | | |
|---|---|---|
| 1 | Court: | Did you have an opportunity to discuss the plea agreement, after it had been translated to you but before you signed it with your lawyer? |
| 2 | Hwang: | Yes. |
| 3 | Court: | Does the plea agreement represent all the understandings that you and your lawyer have with the lawyer for the government? |
| 4 | Hwang: | Yes. |
| 5 | Court: | Do you understand the terms of the plea agreement? |
| 6 | Hwang: | Yes. |
| 7 | Court: | Has anyone made other promises or assurances to you of any kind in order to get you to plead guilty in this case, other than what's in the plea agreement? |
| 8 | Hwang: | No, there is not. |
| 9 | Court: | Do you understand that the terms of the plea agreement are only recommendations to the Court, and that the Court can reject the recommendations without allowing you to withdraw your plea of guilty? |
| 10 | | |
| 11 | Hwang: | Yes. |
| 12 | Court: | Do you understand that the Court can impose a sentence that is more severe than you may anticipate? |
| 13 | Hwang: | Yes. |
| 14 | Court: | Has anyone attempted in any way to force you to plead guilty in this case? |
| 15 | Hwang: | No. |
| 16 | Court: | Are you pleading guilty of your own free will because you are guilty? |
| | | Hwang:    Yes. |

17

*See*, Audiotape of Change of Plea Hearing February 5, 2001 ("Audio").

These answers were given while Hwang was under oath. Hwang states that "the plea agreement was written in [E]nglish and [Hwang] did not understand it, except by the translator .... [Hwang] held no knowledge of American Law" (Defendant's Brief at Exhibit B, p. 10, Docket No. 83.). However, Hwang was provided with an interpreter during this proceeding and at no point during this hearing did Hwang indicate any difficulty understanding what was taking place. Counsel for Hwang informed the Court that the plea agreement had been translated verbatim to Hwang "more than once."[21] Further, the Court also required the interpreter to

---

[21] The relevant portion of the audio is as follows:

| | | |
|---|---|---|
| | Court: | Now Mr. Bischoff, was this plea agreement translated to your client? |
| | Bischoff: | Yes, your Honor. |
| | Court: | Verbatim? |
| | Bischoff: | More than once. |
| | Court: | Ok. This paragraph 8 |
| | Bischoff: | The fact statement? |
| | Court: | The fact statement, that was translated to him? |
| | Bischoff: | Several times. |

1  translate the stipulation of facts contained in paragraph eight while in open court during the

2  change of plea hearing. (*See*, the Court's review of the audio at footnote 10.)

3      Hwang never brought to the Court's attention that he had any difficulty understanding

4  what was taking place either at the change of plea or at his sentencing. Hwang was informed of

5  the maximum sentence he faced for the count to which he pled and was informed of the

6  possibility that the Court could impose an even greater sentence.[22] Additionally, Hwang

7  indicated he had sufficiently discussed the case with his attorney, including the potential

8  applicability of the Sentencing Guidelines, and was satisfied with Mr. Bischoff's

9  representation.[23]

10      "Solemn declarations in open court carry a strong presumption of verity." *Blackledge v.*

11  *Allison,* 431 U.S. 63, 74, 97 S.Ct. 1621, 1629 (1977). Accordingly, a habeas petitioner faces a

12  heavy burden in collaterally attacking a guilty plea based on allegations contrary to oral

---

[22] The relevant portion of the audio is as follows:

| | |
|---|---|
| Court: | Do you understand that the offense that you are pleading guilty to is a felony offense and if your plea is accepted you will be adjudged guilty of the offense? |
| Hwang: | Yes. |
| Court: | Ok. Now the maximum punishment for this offense, it doesn't mean you're going to get it, but I need to inform you of what it is, is life imprisonment, and a mandatory minimum term of imprisonment of ten years, and a four million dollar fine, and a supervised release term of at least five years. |
| Hwang: | Yes. |
| Court: | Ok. Now if you're out on supervised release and you violate a condition or conditions of the term of your supervised release, then you may be returned to jail for up to five years; do you understand? |
| Hwang: | Yes. |

[23] The relevant portion of the audio is as follows:

| | |
|---|---|
| Court: | Have you and your lawyer talked about how the Sentencing Guidelines might apply to your case? |
| Hwang: | Yes. |
| Court: | Do you understand that the Court will not be able to determine the guideline sentence for your case until after a presentence report has been completed? |
| Hwang: | Yes. |
| Court: | And you and the government have had an opportunity to challenge the reported facts and the application of the guidelines recommended by the probation officer? |
| Hwang: | Yes. |
| Court: | And that the sentence imposed may be different from any estimate your attorney may have given you? |
| Hwang: | Yes. |
| Court: | Do you also understand that after your guideline range has been determined, the Court has the authority in some circumstances to depart from the guidelines and impose a sentence that is more severe or less severe than the sentence called for by the guidelines? |
| Hwang: | Yes. |

1 | responses given in open court during a Rule 11 colloquy. *Id.* The Court here followed the Rule
2 | 11 procedures by extensively questioning Hwang about the voluntariness of his plea.

3 |     Moreover, even if Hwang's allegations are true, his proffered evidence fails to
4 | demonstrate ineffective assistance or that his plea was involuntary. Hwang has provided no
5 | credible explanation for what he now contends were perjured statements to the Court. He is
6 | bound by those statements and has not shown extraordinary circumstances that indicate his
7 | answers under oath were not true and his plea was coerced.

8 |     Informing a defendant of the prospect of receiving a harsher sentence if he were to go to
9 | trial is not coercion sufficient to render a guilty plea involuntary. In fact it was counsel's duty
10 | to inform Hwang of as many potential consequences as are foreseeable to allow Hwang to make
11 | an informed decision regarding whether or not to accept the plea agreement.[24] Any erroneous
12 | information given Hwang by counsel regarding the minimum sentence was corrected by the
13 | Court informing Hwang of the minimum sentence of 10 years and maximum of life.[25] After
14 | being advised of the statutory maximums and minimums Hwang did not seek to withdraw his
15 | plea. Accordingly, Hwang's claim and request for an evidentiary hearing in this regard is denied.
16 | *See United States v. Leonti,* 326 F.3d 1111, 1116 (9th Cir.2003) (noting that an evidentiary
17 | hearing is not warranted if the allegations, "when viewed against the record, do not state a claim
18 | for relief or are so palpably incredible or patently frivolous as to warrant summary dismissal")
19 | (citation omitted).

20 |     *Counsel's Investigation of Case.* Hwang contends that trial counsel was ineffective for
21 | failing to further investigate several matters with respect to his case. Specifically Hwang asserts
22 | that counsel failed 1) to obtain evidence that Hwang had never been out of Korea prior to coming
23 | to Guam and that Hwang lacked funds to travel without assistance from his co-defendant; 2) to
24 | contact the employee of the car rental agency regarding the co-defendant's requesting Hwang to
25 | pay for the vehicle and 3) to contact the landlord of the apartment rented by Hwang concerning
26 | conversations between Hwang and his co-defendant.

---

[24] Assuming Hwang's contention that he was told he would get 25-30 years if he lost at trial is true, the Court notes that the guideline range for the charged offense to which he pled would have been 235-293 months (19.3-24.4 years) not including the potential enhancement for conviction of the remaining offenses which were dismissed pursuant to the plea agreement. Thus counsel's assessment of Hwang's probable sentence if he was convicted at trial was realistic.

[25] The Court notes that Hwang provides conflicting information in his pleading regarding exactly what he was told concerning the minimum sentence he would receive under the plea agreement. The number varies between 2-3 years to 10, and 14 years. See, Defendant's Brief at Exhibit B, p. 9, 11, 14, Docket No. 83. These discrepancies alone point cast doubt upon Hwang's account concerning what he was told.

1       The Ninth Circuit recognized in *Lambert v. Blodgett*, 393 F.3d 943 (9th Cir. 2004), that

2   "Courts have generally rejected claims of ineffective assistance premised on a failure to

3   investigate where the record demonstrates that the defendant would have pled guilty despite the

4   additional evidence and where the additional evidence was unlikely to change the outcome at

5   trial. *See, e.g., Hill v. Lockhart*, 474 U.S. at 56, 106 S.Ct. 366 (1985)." In discussing the grave

6   finality of guilty pleas, the Supreme Court has stated:

7           [A] guilty plea represents a break in the chain of events which has
8   preceded it in the criminal process. When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise
9   independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea. He may
10  only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not
11  [competent].

12  *Tollett v. Henderson*, 411 U.S. 258, 266-67, 93 S.Ct. 1602,(1973). If a defendant pled guilty

13  knowingly and voluntarily, he cannot show actual prejudice resulted from his trial attorney's

14  failure to more thoroughly investigate the case before he pled guilty. *Id.* Assuming the witnesses

15  would testify consistently with Hwang's assertions, there is not a reasonable probability under

16  an objective standard that, but for the evidence that would be obtained, Hwang "would have

17  refused to plead and would have gone to trial," *Sanchez v. United States*, 50 F.3d at 1454 (9th

18  Cir.1995). Further, the existence of these witnesses were known to Hwang at the time he entered

19  his guilty plea. Accordingly, in entering the plea, he knowingly and voluntarily waived his right

20  to call those witnesses or raise the potential defenses previously mentioned.[26]

---

[26] The relevant portion of the audio is as follows:

Court:  Ok. Do you understand that you have a right to plead not guilty to any offense charged against you and to persist in that plea?
Hwang:  Yes.
Court:  That you would then have the right to a trial by jury?
Hwang:  Yes.
Court:  That at trial you would be presumed to be innocent and the government would have to prove your guilt beyond a reasonable doubt?
Hwang:  Yes.
Court:  And that you would have the right to the assistance of a lawyer for your defense; the right to see and hear all the witnesses and have them cross-examined in your defense.
Hwang:  Yes.
Court:  You also have the right on your own part to refuse to testify unless you voluntarily chose to do so in your own defense.
Hwang:  Yes.
Court:  And you have the right to the issuance of subpoenas to force the attendance of witnesses to testify in your defense. Do you understand so far?
Hwang:  Yes.

1

## CONCLUSION

2    After conducting a complete review of the record, the Court does not find that counsel

3 at trial, sentencing or on appeal were ineffective for failing to raise the non-meritorious issues

4 addressed by Hwang in the instant petition.  Accordingly, Hwang's motions for both an

5 evidentiary hearing and relief pursuant to 28 U.S.C. § 2255 are DENIED.

6

7    **IT IS SO ORDERED** this *26* day of September, 2005.

8

9

10    _____

11                                         Lloyd D. George*
                                       United States District Judge

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27
| Court: | Do you understand that should you decide not to testify or to put on any evidence, these facts cannot be used against you? |
| Hwang: | Yes. |
28
| Court: | Do you further understand that by entering a plea of guilty, if that plea is accepted by the Court, there will be no trial, and you will have waived or given up your right to a trial, as well as those other rights associated with a trial that I have just described? |
| Hwang: | Yes. |

* The Honorable Lloyd D. George, United States Senior District Judge for Nevada, by designation.