Hwang Jin Yeong
# 02115-093; SS3-23L
Federal Correctional Institution
1900 Simler Avenue
Big Spring, Texas 79720

Defendant-Petitioner, Pro se.

**FILED**

DISTRICT COURT OF GUAM

NOV 2 1 2005 ᎱP

**MARY L.M. MORAN
CLERK OF COURT**

IN THE DISTRICT COURT OF GUAM

TERRITORY OF GUAM

|  |  |
|---|---|
| HWANG JIN YEONG,<br>aka Jin Yeong Hwang,<br><br>    Petitioner,<br><br>  -versus-<br><br>UNITED STATES OF AMERICA,<br><br>    Respondent. | Civil No: 04-00039<br>Crim. No: 00-00150<br><br>**MOTION REQUESTING RECONSIDERATION<br>FROM COURT'S SEPTEMBER 28, 2005<br>ORDER OR, IN ALTERNATIVE, APPLI-<br>CATION FOR CERTIFICATE OF APPEAL-<br>ABILITY, AND NOTICE OF APPEAL.** |

....oOo....

COMES NOW the Defendant, Hwang Jin Yeong, Pro se, and moves respected Court for reconsideration of its September 28, 2005 Order denying Defendant's 28 U.S.C. § 2255 or, in the alternative, for the Court to hold this as a application for Certificate of Appealability (COA) and NOTICE of Appeal to the Ninth Circuit. Defendant shows the Court abused its discretion where facts outside the record required an evidentiary hearing and the Court summarily denied these facts based on facts outside the record, i.e. counsel's affidavit, without affording Defendant opportunity to support his claims by hearing.

Defendant further shows the Supreme Court did, by its own case-law, held <u>Booker v. United States</u>, 160 L.Ed.2d 621 (2005) retroactive to November 1, 1987, by its own judicial

interpretation of Congress's intent of 18 U.S.C. § 3553. Thus, given the facts the Court intentionally overlooked, to discard a hearing, and Defendant, Defendant respectfully moves for reconsideration of the Court's September 28, 2005 Order.

<u>ARGUMENTS</u>

<u>ANALYSIS</u>

Where the government has submitted controverting affidavits from counsel, and agents, contrary to Defendant's affidavits, which explicitly or implicity disputes Defendant's factual allegations of his actual innocence and his attorney instructing him to plead guilty, even though innocence. creates a "genuine issue as to [a] material fact," and both summary judgment or dismissal, without a hearing, is inappropriate. See, e.g. <u>F.R.Civ.Pro.</u> 56(c); <u>Valles v. Lynaugh</u>, 835 F.2d 126, 127 (5th Cir. 1988). Unless potentially false, all facts alleged in the petition must be presumed as true for summary dismissal purposes. See, e.g. <u>Blackledge v. Allison</u>, 431 U.S. 63, 76 (1977); <u>Cooper v. Pate</u>, 378 U.S. 546 (1964); <u>Machibroda v. United States</u>, 368 U.S. 487, 495-96 (1962); <u>Rizzo v. Dawson</u>, 778 F.2d 527, 530 (9th Cir. 1985). Moreover, if facts alleged "point to a 'real possibility of constitutional error,'", like counsel instructing Defendant to plead guilty when he asserts innocence, summary dismissal is not appropriate. <u>Blackledge</u>, at 431 U.S. 75, n. 7(quotation omitted); <u>Accord Fontaine v. United States</u>, 411 U.S. 213, 215 (1972)(per curiam); <u>United States ex rel. McCann v. Adams</u>, 320 U.S. 220, 221 (1943)(per curiam). See also <u>Denton v. Hernandez</u>, 504 U.S. 25, 32-33 (1992)

-2-

(summary dismissal by means of denial of _in_ _forma_ _pauperis_ status is reversible abuse of discretion when district court "inappropriately resolved genuine issues of disputed fact"); Wesson v. Oglesby, 910 F.2d 278, 282 (5th Cir. 1990)(when frivolousness is test for dismissal, court may not summarily dismiss solely because it disbelieves prisoner's allegations and believes respondent's, unless prisoner's versions of facts is inherently implausible or internally inconsistent).

Moreover, Defendant has met the three conditions mandating a hearing in this action, those conditions being: 1) petition alleged facts that, if proven, entitles petitioner to relief; Blackledge, at 431 U.S. 82-83; Townsend v. Sain, 372 U.S. 293, 312 (1963)("where an application for writ of habeas corpus alleges facts which, if proved, would entitle him to relief, the federal court to which the application is made has the power to receive evidence and to try the facts anew"); Lambright v. Stewart, 241 F.3d 1201, 1206 (9th Cir. 2001)(petitioner "is entitled to an evidentiary hearing because he has raised a colorable claim ... and no [federal] court has ever granted him an opportunity to develope the claim"); Here, the mere fact Defendant made allegation his counsel was instructed of his innocence, and had him tell the court (and others) he was guilty, and counsel disputes this, creating controversy outside the record, the first condition is met; 2) fact-based claims survived summary dismissal because there factual allegations were not "'palpably incredible' [or] 'patently frivolous or false'" -- the very standard for summary dismissal in a § 2255 proceeding, e.g. Blackledge, at 431 U.S. 75-76 (citation omitted); Pennsylvania, at 350 U.S. 119; here, this court did

not summarily dismiss the § 2255 action, but issued an order to show cause, thus, the second condition was met; and 3) reasons beyond petitioner or his lawyer's control (unless, as here, counsel rendered ineffective and constitutionally inadequate assistance), and the factual claims have not been previously subject to a full and fair court hearing, and the court's decision (as here) did not result in a factfinding that resolved all the controlling factual issues in the case. E.g. Caro v. Calderon, 165 F.3d 1223, 1228-29 (9th Cir. 1999)(district court's ruling denying evidentiary hearing on ineffective assistance claim is reversed because, "[d]espite [petitioner's] efforts to obtain an evidentiary hearing on this issue, neither the district court nor [government] have reliably found the facts relevant to this claim"). Here, Defendant's claim that counsel led him to plead, after counsel was instructed of innocence, creates a controversy of controverted facts. If this claim is true, then the plea is unvoluntary and not intelligent made, because it was based upon advice of counsel whose loyalty was not with the Defendant. Because the affidavits of Defendant and Government raise fact disputes, § 2255 statute requires a hearing being held. Machibroda, at 368 U.S. 494; see also May v. Collins, 955 F.2d 299, 311 (5th Cir. 1992); Lindhorst v. United States, 585 F.2d 361, 365 (8th Cir. 1978).

Given the above analogy, this court abused its discretion when it dismissed the motion, when controverted affidavits outside the record existed between government and Defendant, and this Court should reconsider its order of September 28, 2005 and set a hearing date in this action, or, in the alternative,

grant a certificate of appealability on the claim: WHETHER THE DISTRICT COURT ABUSED ITS DISCRETION, WHEN IT DENYING THE § 2255 WITHOUT BENEFIT OF ANY HEARING, EVEN AFTER REQUESTED BY DEFENDANT, WHEN CONTROVERTED FACTS EXISTED BETWEEN GOVERNMENT AND DEFENDANT, where supporting case law shows other fact finders would find for Defendant, and the matter of a hearing denies due process protections under the Constitution, Machibroda, at 368 U.S. 494-496; Blackledge, at 431 U.S. supra, and because the district court's decision is debatable or wrong. Slack v. McDaniel, 529 U.S. 473, 484 (2000).[1]

**Booker Application:**

This district court dismissed making a broad allegation that "Justice Breyer expressly stated that Booker applied only "to all cases on direct review." ORDER at 3, ln. 4. First, this is an incorrect statement. Breyer's statement, although limiting, leaves a broad doorway as to other actions besides those on direct appeal. The more correct analysis would be stated "[a]s these dispositions indicate, we must apply today's holdings--both the Sixth Amendment holding and our remedial interpretation [of Congress's intent of 18 U.S.C. § 3553] of the Sentencing [Reform] Act [of 1984] -- [at least] to all cases

---

[1] It is noted that due process issue is substantial. In Zinenmon v. Burch, 494 U.S. 113 (1990)(due process includes a right to a fair procedure), the Court stated that the "[d]ue Process Clause also encompasses ... a guarantee of a fair procedure." Id. at 125. The denial of any hearing by this Court exceeds boundries of fairness and a clear abuse of discretion.

-5-

on direct review." United States v. Booker, 160 L.Ed.2d 621, 665 (2005)(Emphasis added, inserts added). This statement by Justice Breyer, in no manner makes a conclusive and sole application to only direct appeal. The Supreme Court, as other courts, was merely afraid to afford a broad justice and do righteousness by outright stating the Booker decision applied to all cases back to 1987. Nonetheless, the Supreme Court has made plain, that its judicial "remedial interpretation" of Congress's intent, makes Booker retroactive to November 1, 1987, when the Sentencing Act became effective, and this was done by majority rule, not merely Justice Breyer.

In denying Defendant's Booker claim, this court concluded the Supreme Court's decision in Booker was not retroactive beyond direct review, and therefore not applicable at the time of Defendant's sentencing. Subsequently, however, the Supreme Court's judicial interpretation in Booker has conclusively established the "legislative intent" of what the 1984 Sentencing Reform Act intended. Booker, at 160 L.Ed.2d 651 ("looking to legislative intent;" "determin[ing] what "Congress would have intended"), 654 (the entire § 3553 statute as a "unified whole-- a whole that Congress intended to apply to all federal sentencing(emph. added)), 663 (Congress's likely intent). Because Booker involved a question of statutory construction, its holding is retroactively applicable to the time of Defendant's sentencing.

The Supreme Court's decision in Booker was akin to legislating. e.g. Freeborn v. Smith, 69 U.S. 160, 168 (1865).

The power of Congress to make or amend remedial statutes retroactively, absent Ex post facto problems, is unquestionable. E.g. Smith, at 69 U.S. 168 ("We do not question the validity of retrospective statutes that are purely remedial"); see also Frisbie v. Whitney, 76 U.S. 187 (1869). Whether retroactivity applies, then, is a extremely simple question, 'WAS IT CONGRESS' INTENT.' E.g. Rivers v. Roadway Expess, 511 U.S. 298, 311 (1994)("The question is whether Congress manifested such an intent"); e.g. Booker, at 160 L.Ed.2d 651, 663 (determining Congress's intent).

Before this matter is clarified, let's review the term "remedial:"

> "**remedial**, adj. **1.** Affording or providing a remedy; providing the means of obtaining redress < a remedial action > . **2.** Intended to correct, remove, or lessen a wrong, fault, or defect < a remedial statute > . **3.** Of or relating to a means of enforcing an existing <u>substantive</u> <u>right</u> < a remedial right > . (Emphasis added).

Bryan A. Garner, BLACK'S LAW DICTIONARY, 8th Ed. at 1319 (West Law, 2004).

A case that explains the intent of remedial application was <u>United States v. Ursery</u>, 518 U.S. 267 (1996). There, a defendant brought an action regarding a forfeiture action under 18 U.S.C. § 924(d). There, the Supreme Court rationalized that to determine whether the forfeiture was essential criminal in nature, within the scope of the double jeopardy clause of the Fifth Amendment, the ultimate question then centered around whether "by its nature [whether the forfeiture] necessarily is, criminal and punitive, or civil and remedial." <u>Ursery</u>, at 518

Case 1:00-cr-00150    Document 106    Filed 11/21/2005    Page 7 of 26

U.S. 277. The Court reasoned that § 924(d) was merely a "remedial civil sanction." Id.

Under Booker, before Booker was decided, section 3553(b)(1) was a 'mandatory' requirement upon all courts; it denied every defendant to have all facts proven beyond a reasonable doubt standard, but only by a preponderence standard, and denied a jury find the facts, but allowed a judge to find them, usually, unsupported by documented evidence, but usually only by hearsay, for example, the Presentence Investigation Report. E.g. Crawford v. Washington, 158 L.Ed.2d 177, 203 (2004)(requiring testimony be under oath, or court documents, including police interrogations); Bockting v. Bayer, 399 F.3d 1010 (9th Cir. 2005)(making Crawford retroactive). Defendant's substantive constitutional rights to a fair proceeding was 'stomped into the mud" by a unconstitutional statutory provision, which, until Booker, was not remedial, but a mandatory criminal provisions inflicting punitive punishment upon defendants, "requir[ing] application of the full panoply of constitutional protections required in a criminal trial." Ursery, at 518 U.S. 278. And, unlike Ursery, § 3553(b)(1) is sufficient because of its mandatory compulsory nature to make it punitive. Id. at 292.

Like the Supreme Court did in Booker, the Supreme Court in Patterson v. McLean Credit Union, 491 U.S. 164 (1989) did. there, the Court interpreted a 123-year old statute differently from what appellant courts had done (or has done with Apprendi) since its enactment. As to Patterson's retroactivity, the Court

Case 1:00-cr-00150    Document 106    Filed 11/21/2005    Page 8 of 26

stated:

> "A judicial construction of a statute is
> an authoritative statement of what <u>the
> statute meant before as well as after the</u>
> decision of (here, <u>Booker</u>) the case giving
> rise to that construction[.] Thus[,]
> Patterson (like <u>Booker</u>) provides the
> authoritative interpretation of the phrase
> 'make and enforce contracts' in the Civil
> Rights Act of 1866 before the [Congressional]
> 1991 amendment [overruling Patterson] went
> into effect on November 21, 1991.
> [Patterson's] interpretation provides the
> base line for our conclusion that the 1991
> amendment would be 'retroactive' if applied
> to cases arising before that date."

<u>Rivers</u>, at 511 U.S. 313 (Emphasis added, insert added).

The distinction between <u>Griffith v. Kentucky</u>, 479 U.S. 314 (1987), in relation to how it applies to <u>Booker</u>, and the holding in <u>Rivers</u>, is a simple factor. In <u>Griffith</u>, the court made a new rule applicable because it was a change in a constitutional procedural protections under the equal protection clause of the <u>Batson</u> doctrine toward peremptory challenges on racial discrimination. <u>Booker</u> held a two edge sword, one relating to a constitutional procedure, i.e the application of the Sixth Amendment, but additionally, <u>Booker</u> held a judicial interpretation of what Congress's intent was of § 3553 at the time of the 1984 Sentencing Reform Act. Therefore, although <u>Griffith</u> might apply, <u>Rivers</u> also applies because of the judicial interpretation of § 3553 and Congressional intent.

And, unlike <u>Rivers</u>, which rejected retroactivity of the relevant Congressional amendment because the Court reasoned it was 'not so intended' by Congress, the Supreme Court's own judicial construction and "remedial interpretation of

-9-

[Congressional intent] of the [1984] Sentencing [Reform] Act," Booker, at 160 L.Ed.2d 665, of § 3553 is inescapable because--

"the Court has no authority to depart from the Congressional command setting the [November 1, 1987] effective date to the [Sentencing Reform Act] law [] it h[ad] enacted[.]" Rivers, at 511 U.S. 313, and n. 12.

In short, this Court, and like in Patterson, every circuit court, is wrong and in plain error. Booker, unlike Griffith, holds a dual sword, one relating to a change in constitutional procedure, and the second, a judicial interpretation of a statute, changing the statute from a punitive and mandatory nature, to a remedial and advisory nature. Decisions of statutroy interpretation are fully retroactive because they do not change the law, as Griffith did, but rather explain what the law has always meant. Rivers, at 511 U.S. 312-313, and n. 12 ("A judicial construction of a statute is an authoritative statement of what the statute meant before as well as after the decision of the case giving rise to that construction").

For this reason, and contrary to what the Court reasoned, Booker provides the correct interpretation of the law as it stood in Novemner 13, 2003 when Defendant was sentenced. See, e.g. United States v. Shelton, 848 F.2d 1485, 1489-1490 (10th Cir. 1988)(en banc). Therefore, the district court's conclusion that Defendant's sentence was valid and Booker did not apply at the time it occurred is plain error and abuse of discretion.

**Procedural Bar:**

Defendant concedes the correctness of the Court's interpretation in this content, as regarding procedural bar, but noting the Court must acknowledge that Defendant Hwang's allegations, duly made in proper evidentiary form, "must be accepted as true," absent record evidence to the contrary, or where, as here conflicting affidavits exists, and warrants an evidentiary hearing for credibility determinations and findings of fact. E.g. Frazer v. United States, 180 F.3d 778, 781 (9th Cir. 1994)(holding consistent with 10th Circuit that a prisoner's allegations "must be accepted as true" with the prisoner being entitled to an evidentiary hearing on his claims: [u]nless the motions and the files and records of the case conclusively show that the prisoner is entitled to no relief.").

Applying ineffective counsel, and this understanding of truthfulness of allegations, Defendant shows the Court the following:

**Ineffective Assistance of Counsel Claim:**

Defendant concedes lines 2-13 as correct application of the law. Thus, the relevant facts lies in the issues and whether this Court addressed those claims correctly and fully. Defendant contends the court did not and should reconsider its order.

*Application of U.S.S.G. § 5K1.1:* The Court acknowledges Defendant's application of contract law, but fails to acknowledge the totality of the contractual language.

Under contract law, as this Court is aware, the drafter holds the presumption of any ambiguous language or application in the contract drafted. This is standard contract law. Thus, a rational interpretation requires at least a preliminary consideration of all credible evidence offered to prove the intention of the parties. E.g. 9 WIGMORE ON EVIDENCE, (3rd Ed. 1940) § 2470, fn. 11, p. 227. Such evidence includes testimony as to the "circumstances surrounding the making of the agreement ... including the object, nature and subject matter of the writing ..." so that the courts can "place itself in the same situation in which the parties found themselves at the time of contracting." E.g. Universal Sales Corp. v. Cal. Press. Mfg. Co., 20 Cal.2d 751, 761 (19--).

Conversely, everything is to be taken most strongly against the party on whom the obligation of the contract rests, e.g. Joy v. City of st. Louis, 138 U.S. 1 (1891), and any offer or promise within that contract (or agreement) must be construed strongly against the offeror. See R.E. Crummer & Co. v. Nuveen, 147 F.2d 3 (7th Cir. 1945).[2]

A contract requires offer and acceptance, time or date, and price. These factors are present in the plea, as well as the plea including the language of the Presentence

_____

[2] A [Plea] "agreement" carries the connotations of a contract, or an 'expressed' promisary convenant, connoting mutuality of the parties. E.g. RESTATEMENT (SECOND) CONTRACTS § 3; See also Trauma Service Group, Ltd. v. United States, 33 Fed.Cl. 426 (1995), aff'd, 104 F.3d 1321, 1326 (Fed. Cir. 1997). The agreement binds the United States, and all terms of documents tied to the agreement.

-12-

Investigation Report (PSR). In the PSR, the language affords the government to require Defendant to choose between a § 5K1.1 or a Rule 35, which is an improper conduct by Government. E.g. United States v. Alvarez, 115 F.3d 839, 841-842 (11th Cir. 1997). Moreover, government, in this case, already moved for acceptance of responsibility showing Defendant's willing to help government, however, Defendant was not the leader or person owning the drugs, and could only afford limited information that he held knowledge about, under Government's legal contentions. And, contrary to what the Court contends, the court itself is to assure the government does not abuse its authority by reviewing the terms to protect both parties.

Here, the terms, which this Court never considered, included the government recommending the minimum term of incarceration, based upon cooperation by the Defendant. Here, Defendant did cooperate to his best ability, at advise of counsel. He gave names, as well as all information he knew, and three people were

convicted because of Defendant's cooperation, only one of the three being part of the instant case. Government held a duty to recommend the minimum sentence under the guidelines, as well as informing this Court of this assistance by Defendant. Government also merged the boundries of both § 5K1.1 and a Rule 35, which is impermissible. United States v. Drown, 942 F.2d 55, 59-60 (1st Cir. 1991).

This court has completely failed to take notice that

-13-

government **referenced the minimum** and thereby acknowledged Defendant did afford substantial assistance. S.Tr. at 24, lns. 19-22 (Nov. 13, 2002). Nowhere, however, does government mention a § 5K1.1, and by government conceding by admission of the minimum sentence substantial assistance, it was improper for government to defer on § 5K1.1 on any ground it might do a Rule 35 later, and---

this court cannot postpone ruling on a § 5K1.1 motion, but must rule on it at sentencing. E.g. United States v. Bureau, 52 F.3d 584, 595 (6th Cir. 1995).

Ultimately, under the Strickland test, Strickland v. Washington, 466 U.S. 668, 694 (1984), the test requires a court to focus upon whether counsel's performance was sufficient to ensure the fundamental fairness of the proceeding. Id.

However, the prejudice that must be shown need not be anything more than something as small as one additional day in jail. See Glover v. United States, 531 U.S. 198 (2001).

Given this understanding, and the fact this court was never afforded to determine whether government abused its authority, because the § 5K1.1 was never mentioned for the court's consideration, even though, by all terms of the agreement, and government's own reference to the minimum sentence, acknowledges, and concedes, Defendant did afford substantial assistance, the fact Defendant was never afforded the court to take into effect mitigating factors, ignorance, cultural background, whether the 'safety valve' applied, government has failed the terms of the agreement and Defendant

-14-

is entitled resentencing. This Court never even addressed these matters, which directly related to the terms of the agreement, and government has conceded by stating the terms as set by the Plea agreement in the PSR. This Court must reconsider its Order and, at minimum, take these factors into consideration, and the fact this Court never was afforded to address the § 5K1.1 terms on whether Defendant met the substantial assistance benefits of the plea.

*Application of U.S.S.G. § 2D1.1(b)(4)(A)and (B)*. Defendant will concede this argument in part because he, at advise of counsel, did make such statements. However, Defendant also contends that he made these statements because of counsel's legal advise-- after he informed counsel of his innocence, and that this Court never took into effect the hearsay claims and the PSR, which are both additionally part of the plea the court relies upon. E.g. <u>Bockting</u>, at 399 F.3d 1010. The Court should, at least reconsider this claim in this light.

*Application of U.S.S.G. § 5H1.6 and 5K2.0*:

This argument is conceded in whole by Defendant.

*Failure to file Writ of Certiorari*: Contrary to Ninth Circuit Rules, the Supreme Court, in this claim, has stated otherwise. Under the standard the Ninth Circuit Rule applies, and this Court contends, <u>Apprendi</u>, <u>Blakely</u>, <u>Booker</u> and no other case would ever get to the Supreme Court because --

based upon current case law, to take to the the Supreme Court would be futile and frivolous.

In _Bousley v. United States_, 523 U.S. 614 (1998) the Supreme Court, even contrary to its own Rules, held that "futility cannot constitute cause if it means simply that a claim was 'unaccpetable to that particular court at that particular time.'" _Id._ at 623. The matter of importance here, though, is this.

Counsel moved to dismiss himself. He knew there was a dead line for filing to the Supreme Court. Case law is replete with prison petitions that have been GVRed back to the lower courts, after counsel moved to dismiss or refused to file for a prisoner. _Apprendi_, _Blakely_, and _Booker_ all show this by review, and should be acknowledged by this Court (Defendant lacks internet access to review such cases to locate them for judicial review, thereby denying him meaningful access to the courts under the Fourteenth Amendment's equal protection clause, and this Court should notice this without extreme burdens placed upon Defendant when he is denying equal treatments in the courts of America).

Ethical standards for counsel require a attorney to turn over paperwork so the defendant can prepare and continue to submit motions, or in this case, his writ. QUESTION: should prisoners begin to hire gangsters to require attorneys to perform. By this Court's own statements, and the fact Defendant was denied to submit his own writ because he lacked paperwork, because counsel would not turn it over, Defendant was denied his ability in all respect to have his case review by the Supreme Court. Under this Court's analogy, this is the American

way and what America deems 'just us' requires in the courts of this land. Again, ethical standards require a defendant receive paperwork to make his defenses. E.g. Am. Jur.2d Desk Book, Item 56, at pg. 260-261, DR 2-110(A).

Moreover, the Ninth Circuit was additionally at fault in this matter, because it deliberately waited until time for certiorari had expired before making a decision, then refused to enlarge its mandate so Defendant would have the ninety day time frame to file certiorari. Assuming, arguendo, counsel does have an affirmative duty not to file, counsel also holds, as well as each court in this country, an affirmative duty not to prejudice his client. Here, both counsel, and the Ninth Circuit, deliberately delayed until past the ninety day time frame, never sought to extend the time, and never afforded Defendant his paperwork for him to file timely his own certiorari. According to this court's analogy, counsel holds no duty to his client if the Rules state the issue might be frivolous. If this is the standards of the American justice system, and counsel holds no duty to his client to insure he can file timely his own petition to a court, when counsel seeks to withdraw, every defendant, then, is at the mercy of an attorney's own views and decisions. E.g. Wilkins v. United States, 441 U.S. 468 (1979). In short, Defendant was denied his only chance in the Supreme Court because of matters beyond his control, and it denied him due process of law by the attorney and the Ninth Circuit delaying to prevent him from

filing a certiorari in the Supreme Court, and he is now entitled to have his time for certiorari reinstated pursuant to the Fifth and Fourteenth Amendments protections.

*Voluntariness of Guilty Plea.* In regard to the voluntariness of the plea, the court misstates Defendant's facts, without noticing time frames when these facts were stated, and by which attorney they related to.

The Sixth Amendment of the U.S. Constitution guarantees that criminal defendants are entitled to the assistance of counsel in presenting their defenses. The Supreme Court has stated, "[t]he right to counsel is a funcdamental right of criminal defendants; it assures the fairness, and thus the legitimacy, of our adversary process." <u>Kimmelman v. Morrison</u>, 477 U.S. 365, 374 (1986). Furthermore, the Court has recognized that "the right to counsel is the right to effective assistance of counsel." <u>McMann v, Richardson</u>, 397 U.S. 759, 771 (1971)(Emphasis aded).

To succeed on a claim of ineffective assistance of counsel a defendant must show that his "counsel's conduct so undermined the proper function of the adversarial process that the trial cannot be relied on as having produced a just result." <u>Strick-land</u>, at 466 U.S. 686. The <u>Strickland</u> Court went on to hold that in order for a defendant to prevail on an ineffective assistance of counsel claim, he must satisfy a two-prong test. <u>Id.</u> A defendant should demonstrate that the representation he received "fell below an objective standard of reasonableness" and "a reasonable probability that but for

counsel's unprofessional errors, the results of the proceedings would have been different." Strickland, at 466 U.S. 688, 694.

A court reviewing a claim of ineffective assistance of counsel must determine whether a reasonable probability exists that, but for counsel's unprofessional errors, the results of the proceedings would have been different or whether the result was fundamentally unfair or unreliable. Id. (Citing Lockhart v. Fretwell, 113 S.Ct. 838 (1993)). Ultimately, the Strickland test requires courts to focus upon whether counsel's performance was sufficient to ensure the fundamental fairness of the proceeding. Id. However, the prejudice that must be shown need not be anything more than something as small as one additional day in jail. See Glover v. United States, 531 U.S. 198 (2001).

"It is the client's right to expect that his lawyer will use every skill, expend every energy, and tap every legitimate recource in the exercise of independent professional judgment on behalf of the client and in undertaking representation of the client's interests." Frazer v. United States, 18 F.3d 778, 785 (9th Cir. 1994).

In the context of guilty pleas, the U.S. Supreme Court announced that counsel must give objectively reasonable advice before the presumption of effectiveness will be applied. Hill v. Lockhart, 474 U.S. 52 (1985). Ineffective assistance of counsel at the plea stage of a proceeding will render the plea involuntary, and hence, invalid. Id. at 474 U.S. 56. The High Court has stated that the prejudice prong in guilty plea cases focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process. Id. at 59.

-19-

In other words, in order to satisfy the "prejudice" requirement, Defendant Hwang must show that a reasonable probability exists that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going totrial. Id.; Turner v. Tennessee, 858 F.2d 1201, 1206 (6th Cir. 1988).

In Turner, the Court of Appeals held that in order to prevail on an ineffective assistance claim premised upon a defendant's failure to accept a plea, the criminal defendant must demonstrate that he or she would have plead guilty to proposed charges but for counsel's erroneous advice. Id. The converse is also true. See, e.g. United States v. Brown, 991 F.2d 1162, 1168 (3rd Cir. 1993)(vacating sentence when it was unclear whether petitioner had received ineffective assistance on prior state charges). Thus, it follows that if counsel's erroneous advice causes a petitioner to bypass a trial and plead guilty, this may also be ineffective assistance of counsel.

The ABA Standards Relating to the Administration of Criminal Justice provides that "it is unprofessional conduct for the lawyer to understate or overstate the risks, hazards, or prospects of the case to exert undue influence on the accused's decision as to his or her plea." Standard 4-5.1(c) (1979).

Defendant Hwang contended, and has contended, his counsel failed in several prospects. First, he failed to adequately investigate and raise a valid claim. As the Supreme Court recognized in Strickland, "counsel bears a duty to make a 'reasonable' investigation of the law and facts in his client's case." Strickland, at 466 U.S. 691. Additionally, the ABA

Standards Relating to the Administration of Justice provides:

> "It is the duty of the lawyer to conduct a prompt investigation of the circumstances of the case and to explore all avenues leading to facts relevant to the merits of the case and the penalty in the event of conviction. The investigation should always include efforts to secure information in the possession of the prosecution and law enforcement authorities. The duty to investigate exists regardless of the accused's admissions or statements to the lawyer of facts constituting guilt or the accused's stated desire to plead guilty."

Standard 4-4.1.

Here, counsel never sought any investigation of relevant matters brought to his attention. Counsel never sought witnesses for Defendant; counsel never reviewed the law, where the defense of 'aberrent behavior' was a valid defense that was available, where this one a single offense against Defendant, and all evidence indicated no other acts or conduct.

The essential facts this Court has not accepted, or delibertely overlooked, is the understating of the prospects of the case to influence Defendant to plead, and the fact two different lawyers acted at different time frames.

Attorney Williams instructed Defendant if he did not plead, he'd get 25-30 years. He told Defendant by pleading he'd get only 2-3 years. That the interpreter additionally instructed Defendant this same understatement. Affidavit of Hwang, at pgs. 8-9. That Defendant repeatedly told his lawyer William he was innocent, but was continually instructed he had to plead guilty. Notably, NO CONTROVERTED facts regarding this claim exists in the record.

That under attorney Williams legal advice, Defendant pled guilty. This court contends Hwang was to inform the court of

difficulty, ORDER at 11, lns. 21-25, however, Defendant acclaimed even the interpreter instructed he "would get only 2-3 years," stating as the lawyer Williams had stated. Affidavit, at 9. The plea was not written in Korean, and all Defendant had was the translator to rely upon, and his attorney. He was not afforded to make his own decision by reading the very language, himself.

Defendant told attorney Williams he was actually "innocent" but had no idea of what he was faced with, being in a strange culture, a strange environment, and having to rely on people who would not listen to him, to his pleas. Defendant alleged his attorney, additionally (as well as the interpreter), instructed him to inform the Court "yes," even "if deponent did not agree with it" because if "deponent changed his mind the judge would not alike it." Affidavit, at 10. The entire plea was instructed, even though the court stated a mandatory sentence and minimum, upon the understatement of attorney William Defendant would receive only 2-3 years if he pled guilty. Attorney William never stated 10, or 14 years as the court alleges.

AFTER THE PLEA COLLOQUY did attorney William, for the first time, began to state anything toward 10, or 14 years. The 2-3 year statement had now changed. Notably, this Court has failed to acknowledge this fact changed AFTER the plea was entered, with the belief of only a 2-3 year sentence, and that Defendant had been instructed by counsel not to instruct the court to anything. Defendant, being in a foreign situation, followed the advise of this attorney.

A situation that best explains the scenario is the movie called "Midnight Express," which dealt with a man who was caught in Turkey soil. MIDNIGHT EXPRESS, (1978). There, Randy Quaid played a young American Billy Hayes caught with drugs, and placed into a Turkish prison. The court scene had an attorney who told what the person wanted, but was of no assistance as toward the truth of what was faced. The present action in regard to the attorney fits on all fours. Attorney Williams understated the facts, then instructed Defendant not to bring this matter to the court's attention. He stood in a foreign environment, and held no knowledge whether the court would take it out on him if he changed his mind or not. All he could do is follow counsel's legal advise, which did prejudice Defendant, for had Defendant been fully informed upon pleading, he would have proceeded to trial.

Defendant believed he would receive a 2-3 year sentence; that throughout the plea Defendant was informed the plea hearing was only procedure; "not to worry" and only after did facts change to a 10 or 14 year sentence. Defendant was a sitting duck in a pond filled with deadly hunters, and had no escape from the harm that was to befall him by these uncaring individuals.

In this case attorney William's interest and undevided loyalties were not with the Defendant, Glasser v. United States, 315 U.S. 60 (1942), and because the plea was based upon understated, and erroneous, legal advise, Defendant was denied his Fifth Amendment right to a fair proceeding and his Sixth Amendment right to effective counsel, and is entitled to have

-23-

have his conviction vacated.

Finally, contrary to Government's claims, and the Court's Order, there exists controverted facts in this case. No affidavits from attorney William exists to overcome, or even attempt to balance the claims by Defendant.

## ALTERNATIVE REQUEST

If the Court will not reconsider its September 28, 2005 Order denying Defendant's § 2255 motion, based on the foregoing reasons, then:

Notice is hereby given that Defendant Hwang Jin Yeong in the above named case hereby appeal to the United States Court of Appeals for the Ninth Circuit from the Order entered by the Court on September 28, 2005, denying Defendant's 28 U.S.C. § 2255 motion.

## VERIFICATION OF FACTS

Defendant Hwang Jin Yeong does hereby certify that the facts as set forth herein are true and correct to his best knowledge and belief, declaring the same under penalty of perjury under the laws of the United States of America, pursuant to 28 U.S.C. § 1746, on this /5 day of November, 2005.

## CONCLUSION

For the foregoing reasons, and the controverted facts

-24-

in this action, this Court should reconsider its Septermber 28, 2005 Order and grant a hearing in this matter, based on the foregoing issues or, in the alternative, grant Certificate of Appealability in this matter on 1) whether the court abused discretion in not afford a due process evidentiary hearing, and 2) whether Defendant's counsel was ineffective, and 3) whether Defenadnt's plea was involuntary, and 4) whether Booker is retroactive, and file Notice of Appeal in this matter. Defendant requests any additional relief the Court would deem just and proper.

Dated this _15_ day of November 2005.

Respectfully submitted,

BY: _____

HWANG JIN YEONG
Defendant-Petitioner, Pro se.

GWS/cc:

-25-

## CERTIFICATE OF SERVICE

The undersigned hereby certifies he caused to be mailed a true and correct copy of the foregoing Motion for Reconsideration or, in alternative, COA and Notice of Appeal, by sending the same, by placing it into prison official hands per policy and custom for mailing, under penalty of perjury per 28 U.S.C. § 1746, to the attorney for the Respondent, First Class, postage prepaid thereon and addressed to:

    KARON V. JOHNSON, AUSA
    OFFICE OF U.S. ATTORNEY
    SUITE 500, SIRENA PLAZA
    108 HERNAN CORTEZ AVENUE
    HAGATNA, GUAM 96910

all on this _15_ day of November, 2005.


HWANG JIN YEONG
Defendant-Petitioner, Pro se.

GWS/cc:


    7004 1160 0005 3811 3985